[Cite as *State v. Curtis*, 2023-Ohio-1651.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Craig R. Baldwin, J. |
| -vs- | |
| | Case No. 2022CA00033 |
| CORTNEY RAHEEM CURTIS | |
| Defendant-Appellant | O P I N I O N |


| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Appeal from the Stark County Court of Common Pleas, Case No. 2021-CR-1124B |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | May 15, 2023 |
| APPEARANCES: | |


| | |
|---|---|
| For Plaintiff-Appellee | For Defendant-Appellant |
| KYLE L. STONE<br>Prosecuting Attorney<br>Stark County, Ohio | JACOB T. WILL<br>121 South Main Street – Suite #520<br>Akron, Ohio 44308 |
| VICKI L. DeSANTIS<br>Assistant Prosecuting Attorney<br>Appellate Division<br>110 Central Plaza South – Suite #510<br>Canton, Ohio 44702-1413 | |

*Hoffman, P.J.*

**{¶1}** Defendant-appellant Cortney Raheem Curtis appeals the judgment entered by the Stark County Common Pleas Court convicting him following jury trial of trafficking in cocaine with a major drug offender specification (R.C. 2925.03(A)(C)(4)(g), R.C. 2941.1410(A)), and possession of cocaine with a major drug offender specification (R.C. 2925.11(A)(C)(4)(f), R.C. 2941.1410(A)) and sentencing him to term of incarceration of 11 to 16.5 years.  Plaintiff-appellee is the state of Ohio.

### STATEMENT OF THE FACTS AND CASE

**{¶2}** On May 23, 2021, Agent Mark McMurtry of the FBI received a tip someone might be trying to distribute cocaine in Canton, Ohio.  Agent McMurtry is the coordinator of the FBI Safe Streets Task Force, which combines federal, state and local law enforcement in Stark County to investigate drug trafficking.  Agent McMurtry contacted other officers in the task force.

**{¶3}** Canton Police Officer Brandon Schmidt was assigned to the task force.  Acting on Agent McMurtry's tip, the task force located the car in question parked in Plain Township.  When the vehicle began driving south toward Canton, Officer Schmidt followed the vehicle.  He observed the vehicle change lanes without using a turn signal.  Officer Schmidt was in plain clothes and driving an unmarked car, so he did not stop the car, but instead radioed for assistance.

**{¶4}** Patrolman Anthony Angelo of the Canton Police Department stopped the vehicle after hearing the radio alert.  Appellant was driving the vehicle.  When the vehicle was stopped by police, Appellant ran from the car, and was apprehended by officers.  As he fled, he dropped his cell phone, which was recovered by police. Two other passengers

were inside the car:  Appellant's co-defendant Alton Curtis was seated in the front passenger seat, and another man was seated in the back seat.

{¶5}    Officers called for a K9 unit to conduct a sniff of the car.  Officer David Samuels and his dog Boss responded to the call.  Boss alerted on the car.  Officers then searched the car, and located a black backpack on the back seat which contained about a kilogram of a packaged product.  Officers found an assault rifle under a towel in the backseat.  The substance in the package found in the backpack was later determined to be cocaine.  A cell phone, later determined to belong to Alton Curtis, was also recovered from the passenger side dash of the vehicle.  A veterinarian bill and a medical bill in Appellant's name were also found in the vehicle.

{¶6}    Agent McMurtry and Officer Schmidt interviewed Alton at the Canton Police Department.  Although the officers believed recording equipment was operating during the interview, they later discovered the equipment was not functioning properly.  However, both officers took notes on the interview.  During the interview, Alton admitted he traveled from Houston, Texas to Ohio for the purpose of bringing narcotics to Canton.  Alton told officers he had two kilograms of cocaine.  He admitted the backpack belonged to him.  Alton admitted the cocaine in the backpack was the cocaine he brought from Houston, but denied putting it in the backpack.  He denied any knowledge there was a gun in the car.  Alton told police where they could locate the second kilogram of cocaine in his vehicle.

{¶7}    Officers were unable to interview Appellant because he became too emotional, laying on the floor and crying.  Appellant lamented his life was over, and he had screwed up.

**{¶8}** Officers determined the vehicle Appellant was driving was registered to Appellant's girlfriend. The third man in the vehicle told officers he was at Appellant's house spending time there before Alton arrived, then went along with them in the car. He was not criminally charged.

**{¶9}** Officers obtained a search warrant for Appellant's home and for the car Alton drove from Texas to Ohio. Officers were unable to locate the second kilogram of cocaine in Alton's car. In Appellant's house officers found a second firearm, as well as a digital scale of a type often used in drug trafficking.

**{¶10}** The next day, officers again talked to Alton at the Stark County Jail. Alton gave consent to search his cell phone which was found in the vehicle, and gave the officers the phone number and the password for the phone. Both Alton's phone and the phone Appellant dropped when he fled the scene were turned over to the Jackson Police Department for extraction.

**{¶11}** Detective Matt Demyan of the Jackson Township Police Department performed data extractions on the two cell phones. He placed the extracted data from the phones on an external zip drive, and generated reports. Officer Schmidt received the zip drive. He found text messages which matched between the two phones. The messages contained language which Officer Schmidt, in his experience with the task force, found related to discussion of buying and selling cocaine. In some of the messages, Alton referred to Appellant as "Unc." The messages included discussion of the street value of cocaine, the amount of cocaine Alton would bring from Texas, and how much cocaine they could sell. Videos attached to Alton's text messages showed the kilos of cocaine he referred to in his messages.

**{¶12}** Appellant was indicted by the Stark County Grand Jury with trafficking in cocaine and possession of cocaine, each with major drug offender specifications, and having a weapon under disability. The case proceeded to a joint jury trial with Alton Curtis in the Stark County Common Pleas Court. The jury found Appellant guilty of trafficking in cocaine and possession of cocaine, with the major drug offender specifications, but not guilty of having a weapon under disability. The trial court convicted Appellant in accordance with the jury's verdict. The trial court found the convictions merged, and the State elected to have Appellant sentenced for trafficking in cocaine. The trial court sentenced Appellant to an indeterminate term of 11 to 16.5 years incarceration. It is from the March 2, 2022 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. THE JURY'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.

II. APPELLANT'S CONVICTIONS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.

I., II.

{¶13} Appellant argues the judgment is against the manifest weight of the evidence, and further the State did not present sufficient evidence to support the conviction.

{¶14} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

{¶15} An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St. 3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

{¶16} Appellant was convicted of trafficking in cocaine in violation of R.C. 2925.03(A):

(A) No person shall knowingly do any of the following:

(1) Sell or offer to sell a controlled substance or a controlled substance analog;

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

**{¶17}** Appellant was also convicted of possession of cocaine in violation of R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶18}** Appellant argues there was no evidence to support a finding he knowingly transported the cocaine, knowing or having reason to believe the cocaine was intended for sale, and further there was no evidence presented to demonstrate he possessed the cocaine. He argues the mere presence of the cocaine in the vehicle he was driving was insufficient to establish possession, particularly as Alton Curtis admitted ownership of the backpack and the cocaine. Appellant argues he was not implicated by Alton. While he concedes the text messages would provide some evidence to support the convictions, he argues there was no evidence to connect him to the cell phone, nor was there any evidence to demonstrate he was the person sending and receiving the messages concerning the transport and sale of cocaine. While Alton's messages used the identifier "Unc," he argues there was no evidence Cortney and Alton were uncle and nephew.

{¶19} In *State v. Davis,* 5th Dist. Delaware No. 20CAA120052, 2022-Ohio-577, Davis argued his conviction of possession of drugs was against the manifest weight of the evidence because there was another passenger in the vehicle in which the drugs were found, and there was no evidence he owned the drugs or the car. This Court found the conviction was not against the manifest weight of the evidence, because there was evidence of a Facebook post from which the jury could infer Davis was the owner of the vehicle. Because of this, Davis had dominion and control over the place in which the contraband was found. *Id.* at ¶24. The presence of a female passenger in the vehicle did not prohibit the jury from finding Davis constructively possessed the cocaine because multiple people may constructively possess an item simultaneously. *Id.* at 26.

{¶20} Similar to *Davis*, in the instant case the State presented evidence to establish Appellant had dominion and control of the vehicle in which the cocaine was found. The State presented evidence the car was registered to Appellant's girlfriend. A veterinarian bill and a medical bill in Appellant's name were found in the vehicle, and Appellant was driving the vehicle. Officers testified the backpack containing the cocaine was in close proximity to Appellant. From this evidence, the jury could infer Appellant constructively possessed the cocaine.

{¶21} In addition, the State presented evidence Appellant fled the scene as soon as the vehicle was stopped. While Appellant told officers he ran because he did not have an operator's license, the jury could find he fled because of knowledge of the contraband in the backseat. Further, Agent McMurty and Officer Schmidt testified when they attempted to interview Appellant, he became emotional, laid on the floor, cried, and

lamented his life was over and he screwed up, from which the jury could infer Appellant had knowledge of the cocaine in the vehicle.

{¶22} Patrolman Angelo testified as Appellant ran from the vehicle, a cell phone fell from Appellant. Patrolman Angelo picked up the cell phone and turned it over to the FBI task force. The officer identified the phone in court as the phone which he picked up after it fell from Appellant. Detective Demyan testified the phone, which he identified in court, was given to him by the task force for data extraction.

{¶23} Although Appellant argues there was no evidence he was Alton's uncle, Det. Schmidt testified when interviewing Alton, "Alton indicated to us that he had came from Houston, Texas up to his uncle's house. And he brought 2 kilo's of cocaine with him." Tr. (II) 46. While the extracted messages included an Apple identifier and not Appellant's name, we find from the evidence the cell phone fell from his body as he ran and the identifier of "unc" in the messages between Alton's phone and the cell phone which fell from Appellant's person, the jury could infer the cell phone belonged to Appellant, and he was the person using the cell phone to communicate with Alton.

{¶24} Officer Schmidt testified as to numerous text messages communicated between the two cell phones, providing context and definition as to some of the language used in the messages based on his knowledge investigating drug trafficking. He testified the messages discussed the buying and selling of cocaine, the street value of cocaine, the amount of cocaine Alton would bring from Texas, and how much cocaine they could sell. A video attached to a text message sent by Alton showed a kilogram of cocaine. From this evidence, we find the jury could find Appellant possessed the cocaine and was transporting the cocaine for sale at the time the vehicle was stopped.

**{¶25}** We find the State presented sufficient evidence to support the convictions of trafficking and possession of drugs, and the jury did not lose its way in finding Appellant guilty of both charges.

**{¶26}** The first and second assignments of error are overruled.  The judgment of the Stark County Common Pleas Court is affirmed.


By: Hoffman, P.J.

Wise, J.  and

Baldwin, J. concur